IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHAMBALA J.E. HOLLIS,

           Plaintiff,

     v.                                         Civil No. 14-2494-SAC

AEROTEK, INC, BRAD MULCAHY,
EC MANUFACTURING LLC,
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, and
FRANK E. VENTURA,

           Defendants.

MEMORANDUM AND ORDER

Plaintiff, acting pro se, brings various civil rights and tort claims to redress an alleged discriminatory hiring practice by a staffing agency (Aerotek), its employee (Mulcahy), and its client/plaintiff's potential employer (EC Manufacturing), and an alleged failure by the EEOC and its investigator (Ventura) to properly investigate and pursue his claim against those entities.

Plaintiff has filed a motion to dismiss Defendant EC Manufacturing LLC as a party, without prejudice. ECM has not responded to that motion, but has instead filed a motion for judgment on the pleadings.

Defendants EEOC and Ventura have filed a motion to dismiss, and also seek to substitute the United States of America for them. Plaintiff has moved to amend his complaint. These disputed motions are examined below.

## I. Facts

The Court states the facts as alleged in the first amended complaint
(Dk. 27). On June 9, 2014, Plaintiff, an African-American male, was
receiving disability benefits from the Social Security Administration but
wished to supplement those benefits by working. He conducted a job search
on defendant Aerotek's website, saw several job postings with their
accompanying descriptions and requirements, and completed online
applications for at least two jobs for which he thought he was qualified in the
light industrial production/assembly field, attaching his resume. Plaintiff
understood that Aerotek was in charge of the recruitment process for an
unknown "start up" company based in Shawnee Mission, Kansas. Plaintiff
called Aerotek on June 11th to ask whether the jobs he applied for were still
available and was told to come in the next day for an interview.

When Plaintiff did so, he was interviewed by Aerotek employee Brad
Mulcahy. He reviewed Plaintiff's resume and asked why Plaintiff had a four-
year gap in his employment. Plaintiff replied that he was living on his
disability benefits. Mr. Mulcahy then looked doubtful and began making
statements such as: "I don't know if you're a good fit.....the people we
recruit for will have a fit if I give them your resume or send you over."

Mr. Mulcahy then told Plaintiff he needed one or two years' minimum
of production/assembly experience for the job. Plaintiff responded that
Aerotek's website didn't say so, then touted his own qualifications,

experience and attitute. Mr. Mulcahy responded that not all details are posted on the website, and that people like plaintiff come in all the time saying how well they will work. Mr. Mulcahy then suggested that the only way for Plaintiff to obtain employment with the company whose jobs he had applied for was for Plaintiff to work at a different job site for two or three weeks to see if he could perform the job duties. Plaintiff considers that requirement to be a "work-related medical examination," and says he felt distressed and humiliated during the interview process. Plaintiff brings a claim of "emotional distress" against Defendant Mulcahy based on his conduct during the employment interview process.

Plaintiff also alleges that the statements made to him, the questions asked of him, and the requirements placed on him during that interview with regard to Plaintiff's hiring at EC Manufacturing violate Title VII (race) and the ADA. Plaintiff further contends that Aerotek yielded to EC Manufacturing's racial preferences. From this, one could reasonably infer that EC Manufacturing is the employer whose jobs Plaintiff had applied for. Plaintiff's claims against Aerotek and Mulcahy are based on the above facts.

Plaintiff's claims against the EEOC and Ventura arise from the following facts. On June 16, 2014, Plaintiff went to the EEOC to file a complaint of discrimination based on his experience at Aerotek described above. His case was assigned to EEOC Investigator Frank E. Ventura, who interviewed him about his complaint. During the interview, Plaintiff found Ventura's

demeanor and manner of questioning to be rude, offensive, and frustrating.
For example, Ventura allegedly asked Hollis why he was filing a complaint
and advised him to just move on with his life since Plaintiff was hired
through another staffing agency the day after his interview with Aerotek.

On July 16, 2014, the EEOC issued Plaintiff a Notice of Right-to-Sue
Letter, and Plaintiff subsequently requested and received copies of his EEOC
file. Upon review of that file, Plaintiff learned that the EEOC had not filed a
charge against Aerotek, contrary to what Ventura had led him to believe
during the interview. Plaintiff also alleges that Ventura had falsified various
questions Ventura had asked and answers Plaintiff had allegedly given
during his interview, as reflected in his interview notes. Specifically, Plaintiff
alleges that Ventura added the words italicized below:

> 4. Q: Who was hired for the position you applied for? A: "How would I
> know? That is what you need to find out. *I'm sure none of them were
> black.'*
> 5. Q. *How did you know that none of them were black*? A: "*I just
> know.*"

Plaintiff also claims the following italicized sentence is untrue: "*CP indicated
this was "racial steering" and refused to accept any position and walked
out.*" Plaintiff contends he never told Ventura that making him work another
assignment first was "racial steering." Plaintiff agrees that he and Mr.
Mulcahy never reached an agreement about jobs, but claims the two of them
left his office together.

Plaintiff alleges that Ventura unduly prejudiced or compromised the
integrity of the investigation not only by dissuading EEOC's upper

4

management from conducting a full and fair hearing, but also by indirectly influencing the Kansas Human Right Commission to agree with the EEOC's findings. Plaintiff also alleges that Ventura defamed or libeled him, causing him emotional distress and violating the First Amendment. Plaintiff further claims that the EEOC's handling of his charge failed to comply with its own Compliance Manual, and violated his procedural and/or substantive due process rights.

## II. Motion to Dismiss Standard -12(b)(6) motions

To survive a motion to dismiss for failure to state a claim, a complaint must have facial plausibility.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556 [127 S.Ct. 1955]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 [127 S.Ct. 1955].

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly

support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007).

In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008). But in considering the complaint in its entirety, the Court also examines any documents "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and documents attached to the complaint, *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1189 (10th Cir. 2012) (quotations and citations omitted).

Pro se complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89 (2007). *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and will not accept as true conclusory allegations unsupported by factual allegations. *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001).

**III.  Defendant EC Manufacturing**

On January 8, 2015. Plaintiff moved to dismiss ECM as a party, without prejudice, until the conclusion of discovery. (Dk. 42) No reason was stated except "good cause." ECM did not file a response to that motion, but four days later moved for judgment on the pleadings, apparently desiring that any dismissal be with prejudice. (Dk. 47). Its motion alleges that Plaintiff's complaint fails to provide sufficient notice of any claims against ECM as required by Fed. R. Civ. Pro. 8, and fails to show exhaustion of administrative remedies as required for Plaintiff's Title VII and ADA claims. Plaintiff has not responded to that motion.

### A.  Administrative Exhaustion

Both the ADA and Title VII require a party to exhaust administrative remedies before bringing a suit in federal court. *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012). "As a general rule, a plaintiff must file a charge against a party with the EEOC before she can sue that party under Title VII." *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999). Where, as here, the EEOC charge does not name a party as a respondent, the Plaintiff must show the charge informally refers to the party, or show sufficient identity of interest between the named respondent and the unnamed party "to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir.

1980). See *Rathke v. HCA Mgmt. Co.*, 744 F. Supp. 1037, 1038-39 (D. Kan. 1990).

Plaintiff's EEOC charge names only "Aerotek Staffing" as the entitly Plaintiff believed discriminated against him on the basis of his race and his disability. Dk. 46, Exh. 4, p. 5. Its narrative states:

> On or about June 9, 2014, I applied for several positions in Production and Assembly. On or about June 12, 2014, I met with a Recruiter who reviewed my resume and asked me why I had not worked from 2009 to 2013. I answered that I was disabled and living off of disability benefits during that time. The Recruiter originally told me I needed to [have] one to two years of experience in order to qualify. Rather than offer me employment in the positions I had applied for, the Recruiter told me he would send me to a different production or assembly job for two to three weeks to see if I was able to work before giving me the opportunity to work where I had originally applied.

*Id.*

Nothing in Plaintiff's EEOC charge names ECM as a respondent, or otherwise refers to it by name. No allusion is made to any discriminatory acts taken either by the employer who offered the positions Plaintiff had originally applied for, or by the employer who provided the "different production or assembly job." Thus nothing in the charge would have put ECM on notice that Plaintiff was making any assertions of discrimination against it, or would have caused the EEOC to investigate any actions or omissions by ECM.

Plaintiff's first amended complaint alleges that Aerotek yielded to EC Manufacturing's racial preferences. Dk. 27, p. 3. From this, one could

reasonably infer that ECM is the employer whose jobs Plaintiff had originally applied for. But no similar allegation is included in the EEOC charge, as noted above. The claims against ECM in Plaintiff's civil complaint are thus outside the scope of the investigation that could reasonably be expected to grow out of his EEOC charges. *See Atkins v. Boeing Co.*, 1933 WL 186170, *3 (D.Kan. 1993), *aff'd* 28 F.3d 112 (10th Cir. 1994). Because plaintiff failed to name ECM as a respondent in his administrative charge, failed to allege any discrimination by ECM in the EEOC claim's factual narrative, and failed to demonstrate sufficient identity of interest between ECM and Aerotek to cure this omission, Plaintiff's Title VII and ADA claims against ECM must be dismissed for failure to exhaust administrative remedies. *See Ning Lu v. Kendall*, 561 F. App'x 751, 754 (10th Cir. 2014)

## B. Emotional Distress Claim

The court next considers ECM's motion to dismiss Plaintiff's state tort claim of emotional distress, also called outrage. ECM alleges Plaintiff's complaint fails to give sufficient notice of this and other claims against ECM, in violation of the notice pleading rule, Fed. R. Civ. Pro. 8.[1]

Having reviewed the complaint, the Court is uncertain whether Plaintiff even intends to assert a claim of outrage against this defendant, as the thrust of the claim is that defendants Mulcahy and Ventura caused Plaintiff emotional distress by their conduct during their interviews with the Plaintiff.

---

[1] The Court finds it unnecessary to address ECM's argument that Plaintiff's claims against it under Title VII and the ADA are also subject to dismissal for this reason.

In the event that Plaintiff does intend to assert this claim against ECM, he has not done so adequately.

To establish a prima facie case of intentional infliction of emotional distress, plaintiff must show that (1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Bolden v. PRC Inc.,* 43 F.3d 545, 553 (10th Cir. 1994)) (citing *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205 (1986)). *See Veladez v. Emmis Commc'ns,* 290 Kan. 472, 229 P.3d 389, 394 (2010). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012).

The first amended complaint fails to include any facts suggesting that ECM engaged in extreme and outrageous conduct, or that any conduct by ECM caused Plaintiff extreme and severe mental distress. Plaintiff speculates only that "Aerotek yielded to the customer's racial preferences," and implies that ECM is the customer. Dk. 27, p. 7. But even assuming, arguendo, the truth of that conclusory and unsupported statement, far more is required to state a claim of emotional distress.

Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress. *See Boe v. AlliedSignal Inc.,* 131 F.Supp.2d 1197, 1205 (D.Kan. 2001) (citing cases). To constitute sufficiently extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts v. Saylor*, 230 Kan. 289, 293, (1981).

Moreover, Kansas courts are reluctant to extend this cause of action to discrimination claims. *Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir. 1994), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

> Even if defendant's decision to terminate plaintiff was driven by an unlawful motive such as plaintiff's race, defendant's conduct is not extreme or outrageous as those terms are construed by Kansas courts for purposes of assessing the tort of intentional infliction of emotional distress. *See Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 461, 464 (D.Kan.1996) (citing *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1508 (D.Kan.1993); *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260, 1262 (D.Kan.1984)); *Boe,* 131 F.Supp.2d at 1206. To be sure, the court strongly believes that if defendant did terminate plaintiff's employment based on her race, then such conduct would be "outrageous" as that term is used in everyday parlance. But Kansas courts have decided to construe that term so narrowly in the discrimination context (perhaps because other avenues of relief are available for victims of discrimination), that plaintiff's allegations are simply insufficient to rise to the level of "outrageousness" required by Kansas courts to state a claim for intentional infliction of emotional distress.

*Briggs v. Aldi, Inc.*, 218 F.Supp.2d 1260, 1263 (D.Kan. 2002). *See Rupp v. Purolator Courier Corp.*, 790 F.Supp. 1069, 1073 (D.Kan. 1992) (finding

employment discrimination by itself, without aggravating factors like ethnic slurs and physical threats, does "not amount to outrage.")

Courts routinely dismiss claims of outrage on a Rule 12 motion when, as here, all the elements are not alleged or when the alleged conduct is not extreme and outrageous under state law. *See e.g., Tennant v. Miller,* ___ Fed.Appx.__, 2014 WL 5509779 (10th Cir. 2014); *West v. Boeing Co.*, 843 F.Supp. 670, 677–79 (D.Kan. 1994), *reconsideration granted on other grounds*, 851 F.Supp. 395 (D.Kan. 1994); *Moten v. American Linen Supply Co.*, 155 F.R.D. 202, 205 (D.Kan. 1994). Accordingly, Plaintiff's emotional distress claim against ECM shall be dismissed for failure to state a claim. All claims stated against ECM are thus subject to dismissal.

## IV. Plaintiff's Motion to Amend

Plaintiff has moved for leave to file a second amended complaint for the purpose of including FTCA claims against the defendants. Dk. 41. But this amendment is unnecessary, as the Court may afford pro se pleadings liberal construction that construes their tort claims as arising under the FTCA. *See e.g.*, *Aviles v. Lutz*, 887 F.2d 1046, 1048 (10th Cir. 1989); *Elrod v. Walker,* 2011 WL 1113573, 1 (D.Kan. 2011). The Court shall do so here, thus the motion to amend shall be denied.

## V. EEOC as a Defendant

The EEOC argues that the Court should substitute the United States for the EEOC because the EEOC cannot be sued in its own name. But the notice

of substitution named solely defendant Ventura, and the certification process

necessary for substitution has not been completed as to the EEOC. Nor

would substitution appear to be appropriate, as the process substitutes the

United States for a "defendant employee," not for a federal agency

employer. *See* 28 U.S.C. § 2679(d)(1). No substitution of the United States

for the EEOC shall thus be permitted.

Nonetheless, the Tenth Circuit has held that no cause of action against

the EEOC exists for challenges to its processing of claims asserted against

third-party employers. In *Scheerer v. Rose State College*, 950 F.2d 661,

663 (10th Cir. 1991), *cert. denied*, 505 U.S 1205 (1992), a plaintiff brought

an action under various civil rights statutes to redress an alleged

discriminatory hiring practice by a college, and an alleged discriminatory

failure by the EEOC to properly to investigate and pursue her claim against

RSC. The Tenth Circuit affirmed the dismissal of the claim against the EEOC,

stating:

> The circuits which have addressed the issue have uniformly held
> that no cause of action against the EEOC exists for challenges to its
> processing of a claim. (Citations omitted.) Following this established
> line of authority, we hold that Plaintiff's claim for compensatory and
> punitive damages against EEOC under the cited statutory authority
> should have been dismissed pursuant to Fed.R.Civ.P. 12(b)(6), as
> originally argued by EEOC below.

*Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991) (alluding

to Title VII as the "cited statutory authority."). *See Scheerer v. Rose State*

*College*, 774 F.Supp. 620 (W.D.Okl. 1991).

Plaintiff's claims against the EEOC are all premised on its handling of his claims against Aerotek, Mulcahy, or ECM, so shall be dismissed.

## VI. Substitution of Parties - Defendant Ventura

A notice of substitution was filed, stating that pursuant to the Federal Employees Liability Reform and Tort Compensation Act, 28 USC § 2679, "the United States is hereby substituted for the individual defendant Frank Ventura, with respect to Plaintiff's state law causes of action." Dk. 35. Plaintiff objects to the substitution, contending that defendants have misstated his tort claims, that he brings his libel claim pursuant to the First Amendment, and that defendant Ventura's intentional falsification of information is not a discretionary function and is outside the scope of his employment.

### A. Exclusive Remedy Provison

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b); 2671-2680 (1988) (hereinafter, "FTCA"), as amended by the Federal Employees Liability Reform and Tort Compensation Act, provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their office or employment. See *Franklin Savings Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004) (citing 28 U.S.C. § 2679(a) (providing that the FTCA remedy is exclusive" for all claims which are cognizable under 28 U.S.C. § 1346(b))).

14

To the extent Plaintiff is alleging that Defendants were negligent, "negligence claims against government agents are not cognizable under *Bivens,* but may only be brought against the federal government itself under the FTCA." *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001) (citations omitted). The "United States is the only proper defendant in an FTCA action." *Oxendine,* 241 F.3d at 1275 n. 4 (citations omitted). Therefore, negligence claims arising from Ventura's acts within the scope of his office must be brought under the FTCA.

**B. Certification - FTCA**

Section 6 of the Federal Employees Liability Reform and Tort Compensation Act provides that,

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action … commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title … and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

Certification authority has been delegated to the United States Attorney for the district where the civil action is brought. 28 C.F.R. § 15.4. Barry R. Grissom, the United States Attorney for the District of Kansas, has properly certified that at the time of the conduct alleged, defendant Ventura was acting within the scope of his employment. *See* Dk. 35, Exh. A.

Plaintiff disagrees with that conclusion, but the statute vests no discretion in the Court to make an independent determination of that matter for purposes of substitution of parties. Instead, the statute's provision that the action "shall be deemed an action against the United States" upon proper certification is mandatory. Accordingly, the United States is hereby substituted for defendant Ventura as to any negligence claims brought against him in this case.

### C. Discretionary Function Exception

The FTCA waives the United States' sovereign immunity from suit, meaning it may be liable for certain torts its agents commit in the course of their employment. *See Domme v. United States*, 61 F.3d 787, 788 (10th Cir. 1995). Ventura seeks to apply an exception to this rule – the discretionary function exception. If a claim against the government falls within an exception to the FTCA, the cause of action must be dismissed for want of federal subject matter jurisdiction. *See Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)

This exception provides that the Government is not liable for

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

> The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," *Berkovitz, supra,* at 536, 108 S.Ct., at 1958; see also *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953); and "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. *Varig Airlines, supra,* at 813, 104 S.Ct., at 2764.

*Unites States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273 (1991).

Ventura is an EEOC investigator and his role at the investigative and processing stage involves a balancing of factors to evaluate the charge allegations in light of the evidence obtained, which implicates the discretionary function exception. *See Cortez v. EEOC*, 585 F. Supp. 2d at 1292. Plaintiff's first amended complaint challenges the subjective decisions Ventura made during his interview and his ultimate decision to issue a right to sue letter instead of initiating a complaint. That conduct involves a matter of choice or judgment, so is discretionary.

Plaintiff contends that falsifying information on documents related to his civil rights is not a discretionary function and that Ventura acted at the operational level, not the policy level. See *Dalehite v. United States*, 346 U.S. 15, 73 S. Ct. 956, 97 L. Ed. 1427 (1953). But here, established governmental policy allows this EEOC employee to exercise discretion, so it

17

is "presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. The Court does not look into Ventura's specific intent when making his decision about Plaintiff's charge of discrimination, but instead asks more generally and categorically "whether the kind of conduct at issue can be based on policy concerns." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008). Here, the acts taken by Ventura in asking questions, making notes, forming a decision on whether to pursue the charge, and forwarding his decision to the KHRC can be based on policy concerns, and are discretionary. Because the FTCA's discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear this claim. *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995)*.*

### D. Intentional or Mixed Tort Claims

Some of Plaintiff's claims appear to allege intentional acts, specifically Ventura falsifying some of the questions and answers in his notes and influencing the KHRC to agree with the EEOC's findings. But the FTCA contains another exception to its waiver of sovereign immunity for "[a]ny claim arising out of … libel, slander, misrepresentation, [or] deceit …." 28 U.S.C. § 2680(h). This exception is broad in barring "[a]ny claim arising out of" the enumerated acts, whether negligent or intentional. A plaintiff may not recast an intentional tort claim as one for simple negligence to

circumvent the bar of § 2680(h). *United States v. Shearer,* 473 U.S. 52, 55, 105 S.Ct. 3039, 3041–42, 87 L.Ed.2d 38 (1985).

Plaintiff's allegations that Ventura libeled or defamed him fall squarely within this exception. *See Hobdy v. United States*, 762 F.Supp. 1459, 1462 - 1463 (D.Kan. 1991) (finding claim arose out of conduct which allegedly involved the communication of false statements so arose out of "libel, slander, or misrepresentation."). This court lacks jurisdiction over those claims.

As to Plaintiff's claim that Ventura engaged in outrage, Plaintiff has failed to plausibly allege that Ventura engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts v. Saylor*, 230 Kan. 289, 293, (1981). And as noted above, Kansas courts are reluctant to extend this cause of action for outrage to discrimination claims. Accordingly, Plaintiff's claims against Ventura based on outrage, defamation, or other intentional conduct shall be dismissed.

### E. Constitutional Claims

Plaintiff contends that his "defamation of libel" claim is brought pursuant to the First Amendment. The FTCA's exclusive remedy provision does not apply to a civil action against a government employee which is brought for a violation of the Constitution of the United States. 28 U.S.C. § 2679(b)(2)(A). But defamation and libel are state intentional tort claims, and

19

nothing in the first amended complaint states a plausible factual basis for a claim that Ventura violated Plaintiff's First Amendment rights. Plaintiff fully exercised his right to speech and petition by filing his EEOC charge, and no subsequent acts allegedly taken by Ventura prevented, chilled, or infringed on those rights.

Plaintiff's first amended complaint additionally alludes to "inadequate administrative and/or procedural and/or substantive due process violations..." Dk. 27. p. 10. But no facts are included that state a plausible claim on any of these counts. Dismissal under Rule 12(b)(6) is thus necessary.

To the extent Plaintiff's claim based on intentional acts may be construed as a *Bivens* claim against Ventura based on the constitutional violation, rather than as a common law tort action against the United States pursuant to the FTCA, it remains subject to dismissal for failure to state a plausible claim for relief.

The Court finds it unnecessary to address Ventura's assertion that he is entitled to qualified immunity.

IT IS THEREFORE ORDERED that Plaintiff's motion to dismiss Defendant EC Manufacturing LLC as a party, without prejudice, (Dk. 42) is denied, and that ECM's motion to dismiss it for lack of jurisdiction (Dk. 47) is granted.

IT IS FURTHER ORDERED that Defendants EEOC and Ventura's motion to dismiss (Dk 36) is granted and that Plaintiff's motion to amend his complaint (Dk. 41) is denied as moot.

Dated this 24th day of February, 2015, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge