IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHAMBALA J.E. HOLLIS,

                    Plaintiff,

vs.                                    Case No. 14-2494-SAC

AEROTEK, INC. and BRAD MULCAHY,

                    Defendants.


**MEMORANDUM AND ORDER**

     This is an employment discrimination case.  Plaintiff, who
proceeds pro se, asserts that defendants discriminated against
him on the basis of his race and disability when plaintiff was
not referred by a staffing agency named Aerotek, Inc. for
consideration for a production/assembly position with another
company.  Defendants are Aerotek, Inc. and Brad Mulcahy, a
recruiter for Aerotek.  Plaintiff brings this action pursuant to
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et
seq. and the Americans with Disabilities Act, 42 U.S.C. § 12101
et seq.  This case is now before the court upon defendants'
motion for summary judgment.[1]

I.  Standards

     Defendants have the burden on a summary judgment motion to
show that the record establishes they are entitled to judgment

---

[1] Plaintiff has filed a motion for leave to file a surreply.  Doc. No. 130.
That motion shall be granted.  The court has considered the surreply in
deciding the summary judgment motion.

as a matter of law because there is no genuine dispute as to any material fact.   FED.R.CIV.P. 56(a).   The court views the evidence in the light most favorable to plaintiff, as the nonmoving party, and draws all reasonable inferences in plaintiff's favor.   Adler v. WalMart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).   Nevertheless, plaintiff "must still identify sufficient evidence requiring submission to the jury to survive summary judgment."   Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).   In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim.   Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).   "If the evidence [in support of a claim] is merely colorable, or is not significantly probative, summary judgment may be granted."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)(interior citations omitted).   "[P]urely conclusory allegations of discrimination" which are devoid of "concrete particulars" are not sufficient to avoid summary judgment.   Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 119 (2d Cir. 2010)(interior quotations omitted); see also, Adler, 144 F.3d at 671 (non-moving party must set forth specific facts admissible in evidence from which a rational jury could find for non-movant).   "Unsubstantiated allegations carry no weight . . .

2

evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

For the purposes of their motion, defendants assume that plaintiff can present a prima facie case of discrimination. In this situation, to prevail upon summary judgment in instances where plaintiff has not presented direct evidence of discrimination, a defendant must articulate legitimate, non-discriminatory reasons for an adverse employment action. E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1038 (10th Cir. 2011)(ADA case); Young v. Dillon Companies, Inc., 468 F.3d 1243, 1249 (10th Cir. 2006)(Title VII case). This burden is "exceedingly light." Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1173 (10th Cir. 2007). If this burden is met, then plaintiff must show that there is evidence that defendants' reasons are a pretext for unlawful discrimination. Id. Evidence of pretext may be direct evidence of discrimination. It may also be evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." Morgan v. Hilti Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

Conjecture that an explanation is a pretext for intentional discrimination is not a sufficient basis to deny summary judgment.  Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).  A plaintiff's opinion that an interviewer was wrong in his assessment of the plaintiff's qualifications does not demonstrate pretext.  See Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004); Petersen v. Utah Dept. of Corrections, 301 F.3d 1182, 1191 (10th Cir. 2002).  In deciding pretext, the issue is not whether the business judgment was correct but whether it was an honest decision, as opposed to a cover for a discriminatory act.  Rivera, 365 F.3d at 925.

The use of subjective criteria, while lending itself to discrimination more readily, does not prove intentional discrimination.  Pippin v. Burlington Resources Oil And Gas Co., 440 F.3d 1186, 1195 (10th Cir. 2006); Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000).  "Some subjectivity is to be expected in every hiring decision." Conroy v. Vilsack, 707 F.3d 1163, 1177 (10th Cir. 2013). Subjective criteria may create an inference of discrimination if there is a showing of significant disparity in the representation of a particular group, Kelley, supra, or when the evaluation process is wholly subjective.  Conroy, supra.

## II.  Underscore{Uncontroverted facts}

This case arises from an interview plaintiff had on June 12, 2014 with Brad Mulcahy who was working for Aerotek as a recruiter.  Plaintiff, an African-American, was seeking a job with EC Manufacturing (ECM).  Mulcahy is Caucasian.

Aerotek is a staffing company with an office in Overland Park, Kansas.  Aerotek employs recruiters who identify and attract potential employees for Aerotek's clients.  In 2013, ECM was a start-up manufacturer of small electronic components with a facility in Shawnee, Kansas.  ECM was an Aerotek client. Beginning in October 2013, Aerotek supplied applicants for temporary contract positions at the ECM facility.  The vast majority of these workers were production workers who operated product assembly machines.  Aerotek supplied over one thousand temporary contract workers at ECM.  At one point, Aerotek had 300-400 temporary contract workers at ECM.

Rachel Reinhart managed the ECM account for Aerotek.  If a recruiter identified a person who was a good fit for ECM, that person's resume would be referred to Reinhart.  If she approved, the person might be interviewed by ECM.  ECM, not Aerotek, selected persons to hire.  If a person was selected by ECM, he or she would start as a temporary contract employee of Aerotek

for 90 days, after which time ECM could convert that person to a regular ECM employee or discontinue the temporary assignment.[2]

Recruiters for Aerotek could create online job postings relating to specific or multiple job positions.  This was done to attract potential job applicants.

To repeat, Brad Mulcahy was a recruiter for Aerotek at the Overland Park office.  He worked in a different division than Reinhart and he rarely recruited for ECM positions.  But, because ECM was a very significant account, all recruiters were expected to assist with the account.  While ECM had an account with Aerotek, Mulcahy placed 14 workers with ECM.  Mulcahy did not create an online job listing for an ECM position and was not familiar with the online job listings posted by other recruiters.

Mulcahy's knowledge of the ECM's requirements came through Reinhart.  Reinhart had a job description for "machine operator" from ECM.  The job description states that ECM:

> is pursuing a Machine Operator with proven experience in an automated manufacturing environment to operate assembly machine in support of our consumer goods products facility.  The overall responsibility of this position will encompass the daily operation of the automated assembly equipment.  Priorities include: Various assembly work such as, but not limited [to]

---

[2] Plaintiff has asked the court to strike the alleged facts regarding Aerotek's business relationship with ECM on the grounds that a contract between the two companies has not been produced as evidence for the record. Doc. No. 128, p. 4.  The court shall deny this request.  The court finds that the facts alleged are adequately supported by affidavits filed in support of the summary judgment motion.

operating the assembly machines, loading purchased materials, documenting materials loaded, material movement to and from the line, provide relief of other assembly line operators for continuous production, performing process monitors and quality checks. Must be able to stand for long periods of time. Must be flexible and have the ability to change within a moment's notice. Must abide by the company's policies and procedures.

Among the "minimum qualifications" listed on the job description were "experience in operating automated equipment" and "experience in performing process monitors and quality inspections." But, these "minimum qualifications" were not requirements as Reinhart learned in communications with ECM supervisors and human resources personnel.

In October 2013, Reinhart emailed that:

Candidates do not need to have assembly experience but any experience in an automated manufacturing environment is ideal. Offers will be extended to candidates who interview well have great attitudes and are motivated to find a long-term career. . . Management actually said a few of their best hires so far were hair dressers and Subway employees! People will be hired on personality, not experience.

In later emails, Reinhart placed greater emphasis upon job experience. In March 2014, Reinhart emailed that ECM had 65 production openings that needed filled immediately and that:

It's ultra important for every recruiter to be aware, the requirement for ECM Production Assemblers has changed a bit. ECM Supervisors have been instructed to only hire candidates with around 2+ years of manufacturing experience. Any candidates with robotic, automated machinery, electronic assembly, high speed manufacturing automotive and/or lean manufacturing, etc. will be given preference. Job hoppers and

candidates with poor attendance histories need not apply. Getting people hired and in the door is step 1. Our number one priority has got to be finding need (sic) the highest quality of candidates that will last the 90 day contract.

On June 10, 2014, two days before plaintiff's interview with Mulcahy, Reinhart emailed recruiters stating that ECM had urgent hiring needs. She stated in part:

Most important >>>
**Recruiters: It's mission critical that you read and understand the following bullet points so we are all on the same page and our contractors have clear expectations. With so many moving pieces it's absolutely vital that our key focus is on the details. Every bullet point below is critically important as these are Aerotek's biggest at-risk points. As we continue to dominate and gain market share, we must obsess over the details and follow proper protocol. . . .**
• Top focus = identifying candidates who have strong work history and attendance records. No job hoppers. Work on finding a diverse mix of professional and intelligent candidates who will commit to this position. . . .
• Make sure candidates are truly a fit for ECM (Ex: open to repetitive work, ability to pick up small parts, can stand on their feet for 12 hours, are able to work weekends, don't have anything in the next 90 days that conflicts with their schedule, no pending offers, etc.).
• Work to identify sharp candidates with high speed manufacturing and assembly experience. Other key words: robotics, automation, PLC's, computer, clean room environment.
• If you interview a sharp individual who doesn't have their experience but you know they'd interview well, please come and show me the resume. Don't turn away sharp people who are willing to learn.
• Green shift prefers high speed manufacturing and/OR any leadership experience (trainer, lead, manager, supervisor etc.).
• Yellow night shift really wants mature candidates with a technical aptitude in high speed

8

manufacturing specifically automation, PLC's or robotics. . . .

As the emails indicate, certain experience was preferred, but not required for a resume review by Reinhart if an applicant appeared to be a good worker who was sharp and willing to learn. Plaintiff has submitted to the record resumes of many applicants who were placed with ECM. Some of the resumes do not indicate clearly relevant past experience of the kind described in the Reinhart's emails. But, plaintiff does not allege that the resumes were reviewed by Mulcahy.

During the period June 12, 2014 through June 30, 2014, Aerotek placed 110 temporary contract workers at ECM – 102 were placed in production positions. Of the 102, 51 identified themselves as Black/African-American; 17 identified themselves as White; 13 identified themselves as Hispanic/Latino; 8 identified themselves as Asian; 3 identified themselves as belonging to two or more races; one identified himself as American Indian/Alaskan Native; and 9 declined to identify their race.

Of the 14 temporary contract workers Mulcahy placed at ECM, 8 were African-American. Ten of the workers were placed in production positions – 6 identified themselves as Black/African-

American; 3 identified themselves as White, and 1 identified himself as Asian.[3]

Before meeting with plaintiff on June 12, 2014, Mulcahy briefly reviewed plaintiff's resume.   The resume begins with a section titled:  "Objective."   This section states:

> Seeking a full-time position(s) as either, cable installer position, route delivery driver, position with organization involving persons with disabilities or other related health tasks, direct sales, indirect sales, or general construction, drywall, taping, mudding, painting, assembly, production, labor, order picker, forklift operator.   Offering approximately 25 years of combined work experience, strong work ethic, safety, reliability, and maturity.   Skilled at communication and quality customer service.

The next section lists plaintiff's work experience as:   a private home health aide in 2013; a para-transit driver in 2009; an installer of internet service devices in 2008; a cable-installer technician in 2006-2007; a food and fresh produce route delivery driver in 2005-2006 and 2003-2004; and a drywall applicator/general laborer in 1997-2002.   The resume states that plaintiff has a GED, a nursing assistant's certificate, a Class E & B driver's license, and on the job training in skilled trades and general labor (i.e., cable installation and construction).

---

[3] The court assumes after reviewing the affidavits of Reinhart (Doc. No. 116-3) and Janette Carl (Doc. No. 128-8), that these persons had to be reviewed by Reinhart and undergo other interviews or tests before finally being accepted at ECM as temporary contract employees.

Mulcahy asked plaintiff about the gap in plaintiff's employment between 2009 and 2013. Plaintiff explained that he had been disabled or was on disability. Plaintiff did not have an obvious disability, but Mulcahy did not ask about the nature of the disability and plaintiff did not discuss it. Plaintiff inquired about working for ECM. Mulcahy told plaintiff that ECM was looking for at least a year of recent, relevant experience. In response, plaintiff showed Mulcahy two online job postings which did not mention this requirement. Mulcahy explained that he did not create the online job postings.

Plaintiff has alleged that he told Mulcahy that plaintiff had production work experience and that Mulcahy asked plaintiff to show him. Plaintiff then referred Mulcahy to the "Objective" section of the resume. Plaintiff acknowledged in his deposition that this section of the resume did not reflect any specific production assembly work experience and that plaintiff did not name a former employer where plaintiff performed production/assembly work.

Mulcahy has stated that he did not believe that plaintiff's work experience and employment history were a fit for a position at ECM and that he believed his superiors would question any recommendation to refer plaintiff to ECM for an interview. Mulcahy has also stated that he viewed plaintiff's conduct during the interview to be argumentative and that he believed

11

plaintiff would not represent Aerotek well or interview well at ECM so that plaintiff might overcome his lack of qualifications.

Plaintiff has stated that Mulcahy told him that plaintiff did not have the desired production assembly experience or work history. Plaintiff has further stated that Mulcahy offered to place plaintiff in another short-term production assembly assignment with a different Aerotek customer. Plaintiff rejected this offer and kept asking for a job at ECM. He told Mulcahy that everything Mulcahy said was very inconsistent. Doc. No. 128, p. 8. According to plaintiff, this statement caused Mulcahy's eyes to open up like he had seen a ghost. Id. Plaintiff alleges he told Mulcahy, "you don't trust that I can do that job," and Mulcahy responded, "no, because y'all always come out here saying that y'all can work hard." Id. at p. 9. Plaintiff was frustrated that Aerotek would place him somewhere else but not ECM. According to plaintiff, he got up very disgusted with the interview and how he was being treated. Plaintiff has stated that, after the meeting ended and they were standing in the hall, Mulcahy told him, "Are you sure, I'm trying to give you an opportunity to prove yourself to me that you're a good worker."[4] Plaintiff declined and was distraught as he left the building. Id.

---

[4] This quotation is taken from a written statement by plaintiff. Doc. No. 116-11. In plaintiff's deposition, he recounted that Mulcahy said: "I'm

Mulcahy wrote after the interview:

> Walk In Candidate Came in looking for work at ECM.
> Recent work history just isn't what they are looking
> for.   When I mentioned the possibility of other
> opportunities he became combative.  Told me I wasn't
> giving him a chance.  Tried to argue with me.  I don't
> feel he would represent Aerotek well.

Doc. No. 128-10.

Plaintiff testified in his deposition that Mulcahy did not make any racially derogatory comments to him.  But, plaintiff understood Mulcahy's "y'all" statement as referring to "black people and/or persons with disabilities."

III. <u>Summary judgment is warranted against plaintiff's race discrimination claims</u>.

Plaintiff has not offered direct evidence of discrimination.  Therefore, the court shall focus upon whether there is evidence showing that defendants' alleged reasons for the adverse action in this case are a pretext for discrimination.  These reasons are that Mulcahy did not believe plaintiff had the recent relevant work experience desired by ECM and that he did not think plaintiff would interview so well that he could overcome what Mulcahy believed were a lack of qualifications.

Plaintiff has offered several arguments for finding that defendants' reasons are a pretext for discrimination.  First, plaintiff contends that he was qualified for an interview with

---

going to give you one more opportunity.  I'm trying to help you here."  Doc.
No. 127-1 at p. 83 of plaintiff's deposition.

ECM.   As already noted, plaintiff's own view of his qualifications does not support a claim of pretext.   If plaintiff's work experience obviously qualified plaintiff for a job with ECM, then an issue of pretext would be raised.   See, e.g., Johnson v. Weld County, Colorado, 594 F.3d 1202, 1211 (10th Cir. 2010)(employer's judgment in hiring a person for a single position may be questioned as pretext when facts show an overwhelming disparity in qualifications).   Here, the facts in the record do not demonstrate that a reasonable person looking at plaintiff's resume would see clearly that plaintiff had the experience in high-speed manufacturing, production/assembly work, robotics, clean room environment or computers that ECM desired.   Plaintiff states in his deposition that he meant to convey in the "objective" section at the top of his resume that he had performed "production" and "assembly" jobs over 25 years. See Doc. No. 128 at p. 11.   But, this is not unambiguous because that section of his resume indicates what plaintiff is "seeking," not his job experience.   Even if the section is construed to describe plaintiff's job experience, it does not describe recent or clearly relevant experience in production and assembly.   Plaintiff also states in his deposition that he attempted to tell Mulcahy about his previous jobs but that Mulcahy cut him off and said that he would send plaintiff to a production assembly company other than ECM.   See id. at pp. 13-

14.   There is no evidence that Mulcahy cut off plaintiff because of plaintiff's race or disability.   Furthermore, plaintiff's prior production assembly jobs do not appear to be the kind of experience that ECM highly desired.   They involved a wood cutting machine, assembling large neon lights, packing up boxes of pizza, and operating a cotton machine to make stuffed pillows.   Id. at pp. 15-17.   Again, none of these jobs was specifically listed on plaintiff's resume.

The evidence indicates that the desired experience was not required for some applicants if a person was considered smart or sharp or otherwise would interview well.   These are subjective criteria.   As the court has already noted, the use of subjective criteria is not evidence of pretext when they are not the sole criteria and when there is no significant underrepresentation of a protected class in the workforce.   Neither situation exists here.   Especially where the evidence shows that Aerotek and Mulcahy referred large percentages of African-Americans for interviews with ECM, the court does not believe the use of subjective criteria alone supports a finding that plaintiff's perceived lack of qualifications and interview skills was a pretext for race discrimination.   See Kelley, 220 F.3d at 1178.

Plaintiff claims as evidence of discrimination that Mulcahy offered plaintiff a position with a different company which could have been a stepping stone to an interview with ECM.

15

Plaintiff asserts that this indicates plaintiff was qualified to work for ECM.  But, there is no evidence in the record that the qualifications preferred by the different company were the same or similar as those preferred by ECM.  Nor is there evidence that Mulcahy gave this supposed less desirable option to plaintiff because of plaintiff's race or disability.  Moreover, Mulcahy allegedly was offering plaintiff a job opportunity. Plaintiff was not being given a pre-employment test designed to screen out persons on the basis of race or disability.  For these reasons, the court rejects plaintiff's contention that this alleged lesser job offer is evidence of or itself an illegal discriminatory act.

Plaintiff also asserts that Mulcahy's alleged statement that "y'all always come out here saying that y'all can work hard" demonstrates pretext.  This assertion does not rise beyond speculation as to what Mulcahy meant when he said "y'all."[5] There is no other evidence beyond plaintiff's speculation that Mulcahy was referring to black people in general, as opposed to job applicants in general, when he said "y'all."  The court finds that this argument does not support a claim of pretext.

---

[5] At p. 4 n.1 of Doc. No. 128, plaintiff states that "[i]n theory" the motivation for Mulcahy's statement was frustration with the number of job applicants who did not remain employed at ECM, the majority of whom (according to plaintiff) were African-American.  See also, Doc. No. 128, p. 19.  This is admitted speculation which, if true, does not establish a racial motivation for the "y'all" remark.  Also, it is sheer supposition to claim that retention statistics inspired Mulcahy's comment in mid-2014 when ECM was apparently hiring large numbers of temporary contract workers, over one hundred of which were referred from Aerotek in June 2014.

See <u>Allen v. Johnson</u>, 2014 WL 7334901 at *7 (M.D.La. 12/11/2014); <u>Montgomery v. Coca-Cola Ent., Inc.</u>, 2003 WL 138087 at *6 (N.D.Tex. 1/14/2003).

Finally, plaintiff argues that pretext may be established because Mulcahy referred similarly-situated persons for interviews with ECM. Plaintiff draws this information in part from telephone interviews he conducted with Chad Agnew, Donna Lynn Locke and four other current or former ECM employees. Defendants object that the court may not consider plaintiff's accounts of these interviews because they are hearsay. This objection is correct. Instead of producing affidavits from each person interviewed, plaintiff has related what each person told him. This is hearsay and it cannot be considered upon a summary judgment motion. <u>Johnson</u>, 594 F.3d at 1208-10 (court may not consider out-of-court statements made to plaintiff reporting that person in charge of hiring said that he did not hire plaintiff for a position because of her sex and disability). Plaintiff notes that the court authorized the discovery leading to the telephone interviews. It was not necessary, however, or even pertinent for the court to make a hearsay determination at that time.

If the court disregarded the hearsay objection, the court still would not find this evidence sufficient to create a pretext issue. Plaintiff focuses his claims upon Mulcahy's

actions.    Plaintiff  does  not  allege  a  company-wide  policy  of
discrimination.[6]    Mulcahy  placed  Agnew  and  Locke  with  ECM,  but
not  the  other  persons  plaintiff  interviewed.   So,  only  Agnew  and
Locke  are  similarly-situated  to  plaintiff.[7]   See  Metzler  v.  Fed.
Home  Loan  Bank  of  Topeka,  464  F.3d  1164,  1175  (10th  Cir.
2006)(pretext  cannot  be  inferred  where  on  decision-maker  treats
one  employee  one  way  and  another  decision-maker  treats  another
employee  a  different  way);  Aramburu  v.  The  Boeing  Co.,  112  F.3d
1398,  1404  (10th  Cir.  1997)(similarly  situated  employees  are
those  who  deal  with  the  same  supervisor).

Locke  is  African-American.   So,  Locke's  placement  does  not
raise  a  question  of  race  discrimination.   In  addition,  Locke  is
not  similarly  situated  because  Mulcahy  had  placed  Locke  at  a
previous  position  where  she  had  worked  in  a  clean  room
environment  and  performed  well.   Agnew,  who  is  white,  also  is
not  similarly  situated  to  plaintiff  because  he  was  referred  to
Aerotek  by  another  ECM  employee  and  he  made  a  favorable
impression  upon  Mulcahy  during  the  interview.    Mulcahy  has
stated  in  an  affidavit  that  Agnew  "conducted  himself  in  a  highly

---

[6] In plaintiff's surreply, he seems to allege, without pointing to evidence,
that recruiters were directed by Aerotek upper management to use interviews
to improperly screen out applicants.  Doc. No. 130 at p.12 n.9.  But, this
does not appear to be plaintiff's primary argument or one supported by the
record.
[7] Plaintiff submitted an affidavit from Janette Carl, a white female referred
to ECM by Aerotek in June 2014.  Doc. No. 128-8.  Carl was not interviewed by
Mulcahy and is not similarly situated to plaintiff.  Also, her affidavit, in
general, does not appear to support plaintiff's discrimination claims.

professional manner during my meeting with him, even wearing a suit and tie to the meeting."[8]  Doc. No. 129, Ex. R at p. 2.

In summary, plaintiff has failed show admissible evidence upon which a reasonable jury could conclude that defendants' legitimate, non-discriminatory reasons for their adverse actions are too weak, implausible, inconsistent, incoherent or contradictory to be convincing.  Therefore, summary judgment is warranted against plaintiff's Title VII claims.

IV.  <u>Summary judgment is warranted against plaintiff's ADA claims</u>.

Plaintiff's ADA claims should be dismissed on the basis of the same analysis.  To prevail on his ADA discrimination claim, plaintiff must raising genuine issues of material fact that: (1) he is a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of the job he sought; and (3) defendants discriminated against him because of his disability.  See <u>Robert v. Board of County Com'rs of Brown County, Kans.</u>, 691 F.3d 1211, 1216 (10th Cir. 2012).  Here, there is no evidence in the record that defendants considered plaintiff to be disabled.  Although

---

[8] Plaintiff also references that Mulcahy interviewed and "hired" Stephen A. Dempsey, who is white, for an inspection position in May 2014, but that Mulcahy did not refer plaintiff for an interview a month later in spite of plaintiff's prior job experience doing inspection.  Doc. No. 128 at p. 21. There is no resume from Dempsey in the record to compare with plaintiff's resume.  Plus, the number of persons assigned to ECM by Aerotek for "production" positions greatly outnumbered persons hired for inspection positions.  Under these circumstances, the court does not believe that a reasonable jury would find that plaintiff presented evidence that Dempsey was similarly situated to plaintiff.

plaintiff told defendants he had been disabled, a job opportunity was offered, although it was not the job opportunity plaintiff was seeking.   There is no evidence that the lesser job option was extended or that a referral to ECM was denied because of a disability bias.   Absent competent evidence of impermissible motives, it is not the role of the judiciary to second-guess the propriety of an employer's business decisions. Furr v. Seagate Tech., Inc., 82 F.3d 980, 986 (10th Cir. 1996).

Defendants have presented evidence supporting their arguments that the adverse action in this case was motivated by non-discriminatory reasons.   Plaintiff has failed to present sufficient evidence to create a jury issue as to whether those reasons are a pretext for disability discrimination. Plaintiff's feeling that he has been discriminated against on the basis of disability or race is not sufficient to prevent summary judgment upon a discrimination claim.   See White v. Oklahoma, 552 Fed.Appx. 840, 849 (10th Cir. 2014); Campbell v. Meredith Corp., 260 F.Supp.2d 1087, 1106 (D.Kan. 2003); Money v. Great Bend Packing Co., 783 F.Supp. 563, 574 (D.Kan.1992); see also Witt v. Roadway Express, 164 F.Supp.2d 1232, 1239 (D.Kan.2001) (conclusory statements of the nonmovant are not sufficient to survive summary judgment).   For all of these reasons, summary judgment is warranted against plaintiff's ADA claims.

V. <u>Summary judgment is warranted against plaintiff's claims versus defendant Mulcahy on separate legal grounds</u>.

The Tenth Circuit has held that Title VII statutory liability attaches to employers, not individual supervisors. <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996).  The Tenth Circuit has applied the same holding to ADA actions.  <u>Butler v. City of Prairie Village</u>, 172 F.3d 736, 744 (10th Cir. 1999). Accordingly, plaintiff's Title VII and ADA claims for personal liability against Mulcahy must be dismissed.

VI. <u>Conclusion</u>

The court shall grant plaintiff's motion for leave to file a surreply – Doc. No. 130.  Having considered that document and the remainder of the record, the court shall grant defendants' motion for summary judgment – Doc. No. 115.

**IT IS SO ORDERED.**

Dated this 9th day of December, 2015, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

21